# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN YVONNE MILLER, | : | No. 3:17cv1452 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | (Magistrate Judge Arbuckle) |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
|     Defendant | : | |

## **MEMORANDUM**

Before the court for disposition is Magistrate Judge William I. Arbuckle's report and recommendation (hereinafter "R&R") which proposes affirming the decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. (Doc. 13). Plaintiff's action is brought under Sections 205(g), 42 U.S.C. § 405, and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3). The matter is fully briefed and ripe for disposition.

**Background**

Plaintiff Jean Yvonne Miller began her quest for benefits under Titles II and XVI of the Social Security Act on May 19, 2014, when she filed applications for disability insurance benefits, disabled widow's benefits, and supplemental

security income due to physical disabilities. (Doc. 19, R&R at 2). Plaintiff alleges that her disability began on February 11, 2014, after she slipped and fell at a convenience store. (Id.)  At that time, the plaintiff was forty-eight years old. (Id. at 3). After the Social Security Administration (hereinafter "SSA") denied plaintiff's application on October 10, 2014, plaintiff, through her counsel, requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). (Id.)

At the hearing on June 6, 2016, Administrative Law Judge ("ALJ") Stephen Cordovani heard from both the plaintiff and Adolph W. Cwik, an impartial vocational expert. (Id. at 3–4).  The ALJ ultimately found that plaintiff was not disabled under the Social Security Act. (Id. at 4). Plaintiff sought further review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied on December 27, 2016. (Id.)  Thus, the ALJ's decision is the final decision of the Commissioner.

Plaintiff initiated the instant action on August 15, 2017, asking us to reverse the decision of the ALJ and award benefits, or remand for a new hearing. (Doc. 1). Plaintiff seeks this reversal on the grounds that the ALJ's decision to deny his claim for benefits was not supported by substantial evidence and contains errors of law.

Magistrate Judge Arbuckle reviewed the record in this case and recommends that the final decision of the Commissioner of Social Security denying plaintiff's benefits be affirmed. (Doc. 19). The plaintiff filed objections to the magistrate judge's R&R. (Doc. 22). On April 4, 2019, the Commissioner filed a response. (Doc. 25). The plaintiff replied on April 16, 2019, bringing the case to its present posture. (Doc. 26).

**Jurisdiction**

The court has federal question jurisdiction over this SSA appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business….").

**Legal Standard**

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C.A. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C.A. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.' " Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g);

Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529

5

F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is incapable of engaging in "substantial gainful activity" when "[her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

In this case, the plaintiff filed two types of applications under Title II of the Social Security Act: (1) an application for disability insurance benefits and (2) an application for disabled widow's benefits. Both Title II applications require the ALJ to make certain non-disability findings in his decision. With respect to the plaintiff's Title II application for disability insurance benefits, based on her own earnings record, the plaintiff must show that she met the insured status requirement on the date she became disabled. 42 U.S.C. § 423(a); 20 C.F.R. §

6

404.131(a). With respect to plaintiff's application for disabled widow's benefits, based on the earning records of her deceased spouse, plaintiff must show that she: (1) is the widow of the deceased worker; (2) has attained age 50; (3) is unmarried, or that one of the exceptions in 20 C.F.R. § 404.335(e) applies; and (4) has a disability that began before the end of the "prescribed period." (Doc. 13-2, Trans. of Proceed. at 27); see 20 C.F.R. § 404.335.

After the ALJ makes the requisite non-disability related findings, the ALJ then makes the disability-related findings, which are the same for each application filed by the plaintiff. The ALJ evaluates disability benefits claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the ALJ to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4).

In this case, the ALJ found that, with respect to the plaintiff's application for disability insurance benefits based on her own earnings record, the plaintiff met the insured status requirement. (Doc. 13-2, Trans. of Proceed. at 29). With

7

respect to plaintiff's Title II application for disabled widow's benefits based on her deceased husband's earning record, the ALJ found that the plaintiff also met the non-disability requirements for these benefits. (Id.)

Moving to the five-step sequential analysis for disability-related findings, the ALJ found at Step 1 that plaintiff has not engaged in substantial gainful activity since February 14, 2013. (Id. at 28). At Step 2, the ALJ found that plaintiff had the following severe impairments: COPD; degenerative disc disease; osteoarthritis in her right shoulder; status post right elbow and right shoulder surgery performed on December 10, 2014; right forearm radiculopathy; status post right knee meniscectomy; depression; generalized anxiety disorder; and panic disorder. (Id.) The ALJ found that the following impairments were medically determinable but non-severe: headaches; GERD; esophagitis; small hiatal hernia; mild gastritis; celiac disease; and de Querivan's tenosynovitis (tendon inflammation and swelling at the base of thumb). (Id. at 29). At Step 3, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Id. at 30).

The ALJ next determined that plaintiff has the residual functional capacity (hereinafter "RFC") to engage in "light" work, meaning she can perform a full

range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] can sit, stand, and walk three hours each continuously and a total of six hours each during an eight-hour workday. With her right arm she cannot reach overhead but can occasionally reach in other directions. The [Plaintiff] can occasionally push and pull with her right arm. She can frequently handle and finger with her right hand. She has no limitation on using her left upper extremity. The [Plaintiff] can frequently operate foot controls. She can occasionally climb ramps and stairs, but cannot climb ladders, ropes, and scaffolds. She cannot crouch or crawl. The claimant can occasionally balance and stoop. She can frequently kneel. The claimant cannot work at unprotected heights or around dangerous moving mechanical parts. She can have occasional exposure to humidity, wetness, fumes, odors, dust, gases, and poor ventilation. She can occasionally work with vibratory tools and equipment. She can have frequent exposure to extreme cold and heat. The [Plaintiff] can understand, remember, and carry out simple instructions and tasks. She cannot have supervisory duties or work a job requiring independent decision making. She can perform jobs with minimal changes in work routine and processes. The [Plaintiff] can have frequent interaction with supervisors, co-workers and the general public.

(Doc. 13-2, Trans. of Proceed. at 31).

The ALJ then proceeded to Step 4 of the sequential evaluation where he found, after reviewing vocational expert testimony, that plaintiff was unable to perform any past relevant work. (Id. at 38). The ALJ identified past relevant work as a home care worker, home interiors consultant, and telemarketer. (Id. at 39).

Finally, at Step 5, the ALJ determined that plaintiff's RFC and other vocational characteristics would not prevent her from engaging in other work that exists in the national economy. Although the ALJ recognized that the plaintiff's

ability to perform work at all exertional levels is compromised by her nonexertional limitations, the ALJ ultimately concluded that the plaintiff could work as a cashier or a crossing guard. (Id.)  A vocational expert testified at the hearing before the ALJ that these jobs exist in the national economy for an individual with the plaintiff's age, education, work experience, and residual functional capacity. (Id.)  As such, because the ALJ concluded that plaintiff is capable of making a successful adjustment to other work, he determined that plaintiff does not qualify as a disabled individual. Plaintiff then filed the instant appeal.

     As noted above, the Clerk of Court assigned plaintiff's appeal to Magistrate Judge William I. Arbuckle for an R&R.  Magistrate Judge Arbuckle recommends affirming the decision of the Commissioner of Social Security. (Doc. 19). Magistrate Judge Arbuckle determined that the ALJ's decision to deny plaintiff's claims for benefits is supported by substantial evidence in the record. Specifically, the magistrate judge found that: 1) the ALJ did not err by discounting the only medical opinion by a psychologist; 2) the ALJ did not fail in his duty to develop the record; 3) the ALJ did not abuse his discretion by failing to order a consultative examination with a mental health professional; and 4) the ALJ properly considered the combined effect of the plaintiff's mental health condition

on her physical impairments. The plaintiff objects to Magistrate Judge Arbuckle's R&R on each of those grounds. We will review these objections in turn.

### I. Whether the ALJ's RFC Assessment is Deficient Because he Discounted the Only Medical Opinion by a Psychologist

The plaintiff argues that Magistrate Judge Arbuckle erred in concluding that the ALJ's findings were supported by substantial evidence because the ALJ did not base his RFC determination for the plaintiff's mental impairments on a medical opinion. The plaintiff contends that it is inadequate for the ALJ to rely solely on lay interpretation of medical evidence. The defendant argues, however, that the ALJ need not necessarily base his RFC assessment on a medical opinion.

While the defendant is correct that there is no categorical rule that an ALJ's RFC finding must be based on a medical opinion, "rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Ennis v. Astrue, No. 4:11-CV-1788, 2013 WL 74375, at *6 (M.D. Pa. Jan. 4, 2013) (citing Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence")). The absence of such a rule, however, does not provide an ALJ free reign to ignore medical evidence, as there is an undeniable medical

11

aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that she experiences. When making an RFC determination, an ALJ cannot substitute medical evidence for "his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Therefore, an ALJ must proceed with caution when affording no weight to all medical opinions in the record, relying solely on lay interpretation of medical evidence. See Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).

It appears to be undisputed that the record contains only one medical opinion relative to plaintiff's mental impairments, which is that of state agency review psychologist Dr. Erin Urbanowicz. While the ALJ did not go so far as to completely discount Dr. Urbanowicz's opinion, he afforded Dr. Urbanowicz's opinion "little weight," citing the fact that Dr. Urbanowicz never actually examined the plaintiff and did not have access to subsequent medical records as reason for his weight distribution. (Doc. 13-2, Trans. of Proceed. at 37).

While we have no reason to doubt that the ALJ actually did provide some weight to Dr. Urbanowicz's opinion, the ALJ only references Dr. Urbanowicz when he explains the weight he gave to Dr. Urbanowicz's opinion. (Id.). In no other part of the opinion does the ALJ discuss Dr. Urbanowicz's findings. Without

any reference to what aspects of the ALJ's decision were influenced by the medical opinion or which parts of the opinion the ALJ found credible, there is little practical difference to a reviewing court between the ALJ giving Dr. Urbanowicz's opinion "little weight" and no weight at all. Therefore, we find that this case presents itself as being similar to cases where the ALJ gave no weight to any medical opinion.

The defendant contends that because the ALJ's RFC assessment is nevertheless consistent with Dr. Urbanowicz's medical opinion as well as an opinion submitted by plaintiff's therapist, there is substantial evidence to support the RFC assessment. We disagree. As noted above, the ALJ determined that, with regard to her mental limitations, the plaintiff has the RFC to "have frequent interaction with supervisor[s], co-workers and the general public." (Doc. 13-2, Trans. of Proceed. at 31). Therapist Mickle's letter[1], which explained that the plaintiff has been diagnosed with "Panic disorder, Depression, Anxiety Disorder and Post Traumatic Stress Disorder (due to past physical abuse of a significant nature)," describes the plaintiff's symptoms as "often debilitating at times to the degree that it interferes with her daily functioning." (Id.). We agree with the plaintiff's assertion that activities involving daily functioning differ from those of

---

[1] The parties appear to agree that Therapist Mickle's letter is not a medical opinion as Therapist Mickle is not a licensed or certified psychologist.

13

employment in that they are often more flexible and have no performance standards. Gonzales v. Colvin, 191 F. Supp. 3d 401, 424–25 (M.D. Pa. 2015). Though the relevant legal standard here does not require that all of the evidence supports the ALJ's conclusion, we find it misleading to suggest that the ALJ's opinion is consistent with Therapist Mickle's letter.

As a result of the only medical opinion concerning the plaintiff's mental health being discounted and the lack of supporting evidence from other sources, we cannot find that the ALJ had substantial evidence supporting his decision.

**II.     Whether the ALJ Failed to Adequately Develop the Record**

The plaintiff next argues that Magistrate Judge Arbuckle erred in finding that the ALJ properly developed the record, as the ALJ wrote his opinion without a complete record before him. Plaintiff contends that plaintiff's counsel informed the ALJ at the disability determination hearing that he was having difficulty obtaining plaintiff's medical treatment records. The ALJ agreed to leave the record open to allow the plaintiff more time to file necessary documents. Apparently, within two weeks from the date of the hearing, plaintiff's counsel provided two sets of treatment records to the ALJ. The ALJ then closed the record, assuming that all documents had been provided. The plaintiff contends that the ALJ should have known that the record was still not complete because there was a gap of thirteen months of treatment records missing from the record.

14

The defendant contends, however, that the ALJ's decision to leave the record open for two weeks in order to allow the plaintiff more time to file documents supports Magistrate Judge Arbuckle's finding that the ALJ properly performed his function. The defendant claims that because the plaintiff provided two sets of records from Dickinson Center, the same entity that the plaintiff said that she was missing documentation from, it was reasonable for the ALJ to conclude the record was adequately developed.

We agree with the defendant that an ALJ is entitled to assume that the claimant "is making [her] strongest case for benefits" when the claimant is represented by counsel and counsel does not request to supplement the record. Beers v. Colvin, No. 3:12-CV-2129, 2014 WL 241514, at *6 (M.D. Pa. Jan. 22, 2014). This does not, however, represent the plaintiff's situation. Here, the plaintiff's counsel, as mentioned above, specifically notified the ALJ that the record was not complete and that he was having difficulty obtaining all of the records. (Doc. 13-2, at 51–53). Plaintiff's counsel's statements should have led the ALJ to conduct a closer inspection of the supplied records or simply ask plaintiff's counsel if everything had been submitted. Either strategy would have informed the ALJ that there were in fact thirteen months of treatment records missing from the record.

15

Further, a reasonable likelihood exists that this evidentiary gap resulted in prejudice against the plaintiff in this case. Contrary to the defendant's contentions, the plaintiff has elicited at least one concrete example of the prejudice created by the ALJ's failure to develop the record. The plaintiff has shown that at least part of the reason the ALJ discredited the plaintiff's testimony was because of the lack of corroborating medical treatment records. (Doc. 14, Pl.'s Br. at 13). As such, we find that the ALJ did not adequately develop the record and that there is a reasonable likelihood that the resulting evidentiary gap prejudiced the plaintiff's case.

### III.      Whether the ALJ Should Have Ordered a Consultative Examination

The plaintiff also argues that Magistrate Judge Arbuckle erred in finding that the ALJ appropriately used his discretion in deciding not to order a consultative examination of the plaintiff. Generally, ALJs have the authority to order a claimant to undergo a consultative examination. See 20 C.F.R. §§ 404.1517, 416.917. The decision to order a consultative examination is within the sound discretion of the ALJ unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision. Thompson v. Halter, 45 Fed. Appx. 146, 149 (3d Cir. 2002). Here, the ALJ did not order a consultative examination of the plaintiff, which plaintiff contends was erroneous. The plaintiff argues that the lack of an RFC assessment in the record,

16

the fact that the state agency consultant's rendered her opinion without the benefit of any of the plaintiff's records after the initiation of plaintiff's mental health treatment, the plaintiff's therapist's opinion that plaintiff's mental health impairments were debilitating and interfered with her daily functioning, and the plaintiff's GAF score of 49, which is indicative of serious symptoms or impairment, all contribute to the need for a consultative examination in this case.

The defendant, on the other hand, contends that these aspects of the case are insufficient to warrant the order of a consultative examination. The defendant claims that the plaintiff's own statements, Therapist Mickle's letter, and the plaintiff's treatment records were sufficient to support the ALJ's opinion without the need for a consultative examination.

It is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). As part of these determinations, "[a]n ALJ must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited." Id. at 362 (citing 20 C.F.R. § 404.1527(f)(2)(ii)); Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005). If the evidence is insufficient for the ALJ to determine whether a claimant is disabled, or if the ALJ cannot reach a conclusion after weighing the evidence,

the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. § 404.1520b(b)(2). The latter includes re-contacting a claimant's physician, psychologist, or other medical source, requesting additional existing records, asking the claimant to undergo a consultative examination, or asking the claimant or others for more information. Id.

As noted above, in this case there was only one medical opinion in the record regarding the plaintiff's mental impairments, and it was largely discounted, which both parties seem to agree was reasonable given the fact that the state agency consultant did not have any of the plaintiff's records after the initiation of plaintiff's mental health treatment. This, however, left the record devoid of any medical opinion and RFC assessment of the plaintiff's mental state. Therefore, the ALJ needed to rely on Therapist Mickle's letter, which is at odds with the RFC findings, the plaintiff's treatment records, and the plaintiff's own statements.

Similarly, in Suskie v. Colvin, No. 3:15-CV-573, 2016 WL 5787361 at *5 (M.D. Pa. Oct. 4, 2016), an ALJ relied on a claimant's statements and a medical opinion to which she only gave "some weight." In that case, we found that the ALJ "could and should have done more" because the ALJ appeared to utilize the lack of evidence to support her decision rather than gather more information. Id. at *5–6. Although the ALJ was slightly better suited to make a determination in this case because he had access to the plaintiff's treatment records, those

18

records, as we discussed above, are nonetheless incomplete. As a result, the ALJ's opinion veers dangerously close to substituting his own credibility judgments, speculation, and lay opinion for proper medical evidence. See Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985). The most prudent resolution to this issue is for the ALJ to order a consultative examination so that the record is supplemented with proper medical evidence of the plaintiff's mental impairments.

### IV. Whether the ALJ Properly Considered the Combined Effect of the Plaintiff's Mental Health Condition on Her Physical Impairments

Finally, the plaintiff argues that the ALJ improperly considered the plaintiff's neck, back, arm and shoulder problems in isolation from plaintiff's depression, anxiety, and PTSD. Because we will remand this case and grant the plaintiff's objections as explained more thoroughly above, we need not address this issue. The ALJ should conduct a proper, complete analysis of all issues in light of this memorandum.

**Conclusion**

For the foregoing reasons, we find that the ALJ's decision to deny the plaintiff's claims for disability insurance benefits, disabled widow's benefits, and SSI is not supported by substantial evidence in the record. Thus, we will grant the plaintiff's objections and decline to adopt Magistrate Judge Arbuckle's R&R.

19

This case will be remanded for further proceedings consistent with our findings.

An appropriate order follows.

BY THE COURT:

Date: August 12, 2019

s/ James M. Munley_____
**JUDGE JAMES M. MUNLEY**
**United States District Judge**